# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:08CR00034 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **WILLIAM JOSEPH MEACHUM, JR.**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Brian Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

In this criminal case, the defendant, convicted by a jury of transmitting a threat in interstate commerce, has filed a posttrial motion seeking acquittal and a new trial. For the reasons that follow, I will deny the motion.

I

The defendant William Joseph Meachum, Jr., was convicted by a jury of knowingly transmitting in interstate commerce a communication containing a threat to injure the person of another in violation of 18 U.S.C.A. § 875(c) (West 2000) (Count Five). The defendant was charged in two additional counts with committing the same crime on different dates, but he was acquitted of one of those counts (Count

Three), and the jury could not reach a verdict on the other, on which I declared a mistrial (Count One).[1] Regarding Count Five, the government contended at trial that the defendant, a Vietnam veteran, threatened an employee of the U.S. Department of Veterans Affairs (the "VA") during a telephone call. In his Renewed Motion for Acquittal and for New Trial, the defendant argues that an acquittal should be granted because as a matter of law his statement could not be considered as a "true threat." The defendant argues alternatively that he should be granted a new trial based on evidence discovered subsequent to trial, and because the court erred in refusing certain evidence and two of the defendant's proposed jury instructions. The defendant's motion has been briefed and argued and is now ripe for decision.

II

The evidence adduced at trial was sufficient for a reasonable jury to convict the defendant of Count Five beyond a reasonable doubt. Therefore, I will deny the defendant's motion for acquittal.

The defendant argues that the government submitted insufficient evidence for a reasonable jury to convict him of the crime charged. Specifically, the defendant claims that there was insufficient evidence that the defendant's statement was a true

---

[1] At the government's request, I later dismissed Count One.

-2-

Case 1:08-cr-00034-JPJ   Document 122   Filed 05/07/09   Page 2 of 19   Pageid#: 476

threat because his statement was protected political speech, any threat was conditioned on an eventuality that would not occur, and his statement was addressed to a third party.

A conviction must be sustained if, viewed in the light most favorable to the government, there is substantial evidence to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942), *superseded by statute on other grounds as recognized in Bourjaily v. United States*, 483 U.S. 171, 177-78 (1987). I must determine "whether *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Capers*, 61 F.3d 1100, 1107 (4th Cir. 1995) (internal quotations and alteration omitted).

The evidence at trial showed the following facts. Benjamin LaBuz, a special agent for the VA, testified that he had called the defendant in Virginia from his office in Washington, D.C., on June 25, 2008. Agent LaBuz identified himself and stated that he was calling from Washington. He asked about two phone calls the defendant had made that had caused the VA some concern. The defendant explained that he had previously been receiving so-called fee basis care, by which a veteran is allowed to obtain medical care other than at a VA facility. He told Agent LaBuz that he was upset because his fee basis benefits had been revoked. The defendant said that he was trying to get his benefits reinstated.

Agent LaBuz testified that he had specifically asked the defendant about a statement he had made on a phone call to someone at the VA medical center in Mountain Home, Tennessee, on June 10, 2008. It had been reported to LaBuz that the defendant had said that if he ever saw a particular employee of the VA who worked at the Mountain Home facility, he would "blow her God damn head off."[2] Agent LaBuz testified that he had written down the defendant's response to this question in his notes verbatim. The defendant replied to LaBuz, "When I tell you I'm going to do something, I'm going to do it. I meant what I said. The first person I come and see will be her. I'll break her fucking neck. No one will recognize her." (Trial Tr. vol. 1, 6, Jan. 29, 2009.) The defendant said that this particular employee, M.M., was the person who had revoked his benefits, and that she "was the person that was causing this issue." (*Id.* at 7.)

The defendant stated that "he knew in the area where he lived you could get semi-automatic weapons and he mentioned a few by name." (*Id.* at 9.) The defendant also said that his hands were his weapons, that he knew how to paralyze people, and

---

[2] This statement formed the basis of Count One, for which the jury did not reach a verdict and I declared a mistrial. Testimony at trial also indicated that on June 18, 2008, the defendant called the VA hotline in Washington, D.C., and stated that if certain of his VA benefits were not reinstated, he would kill someone; on the same phone call, he mentioned a particular VA employee by name. This statement formed the basis of Count Three, of which the jury found the defendant not guilty.

-4-

Case 1:08-cr-00034-JPJ   Document 122   Filed 05/07/09   Page 4 of 19   Pageid#: 478

that "people aren't going to treat him like shit or he'll hurt them." (*Id.* at 7.) The defendant noted that he had injured hospital staff in the past. He indicated that he had dragged someone across a desk and threw someone through a window at a hospital in Atlanta.

Agent LaBuz testified that he had been concerned that the defendant would go to Mountain Home. He did not warn M.M. about the threats directed at her, but he informed the VA police at the Mountain Home facility. The next day, June 26, 2008, he drove more than five hours from Washington, D.C., to the defendant's home "[b]ecause of the seriousness of the conversation. . . . We needed to make sure everyone was safe, all the employees were safe." (*Id.* at 13.) He contacted the local Secret Service office and brought a Secret Service agent and the local Sheriff with him to the defendant's home.

The defendant argues that his statement on June 25, 2008, regarding M.M. was protected political speech under *Watts v. United States*, 394 U.S. 705 (1969). In *Watts*, the Supreme Court drew a distinction between threats that are "political hyperbole" and thus entitled to constitutional protection, and "true threats" that are not protected. *Watts* involved statements made at an anti-war rally at the Washington Monument in 1966. *Id.* at 706. Watts told the crowd, "I have already received my draft classification as 1-A and I have got to report for my physical this Monday

-5-

coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id.* After this statement, both Watts and the crowd laughed. *Id.* at 707. Considering the context and content of the statement and the reaction of the listeners, the Court concluded that this political hyperbole was not a "true threat." *Id.* at 708.

The Fourth Circuit has held that "in order to avoid punishing constitutionally protected speech not amounting to a 'true threat,' the prosecution must prove that an ordinary, reasonable person who is familiar with the context of the communication would interpret it as a threat of injury." *United States v. Spring*, 305 F.3d 276, 280 (4th Cir. 2002) (internal quotations and alterations omitted); *see also United States v. Darby*, 37 F.3d 1059, 1066 (4th Cir. 1994) ("Whether a communication in fact contains a true threat is determined by the interpretation of a reasonable recipient familiar with the context of the communication."). I instructed the jury that a "threat" is

> a serious statement expressing an intent to injure or murder any person, which under the circumstances would cause apprehension in a reasonable person, as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner. A statement is a threat if it was made under such circumstances that a reasonable person hearing the statement and familiar with all of the objective circumstances under which the threat was made, would understand it as a serious expression of an intent to injure or murder. . . .

-6-

(Jury Instruction No. 11.)

Here, there was sufficient evidence for the jury to conclude that a reasonable person hearing the defendant's statement and familiar with all of the objective circumstances would understand it as a serious expression of an intent to injure or murder M.M. The content of the statement was, "When I tell you I'm going to do something, I'm going to do it. . . . I'll break her fucking neck. No one will recognize her." (Trial Tr. vol. 1, 6, Jan. 29, 2009.) The statement was spoken to Agent LaBuz, a person charged with protecting VA employees such as M.M. Agent LaBuz was aware that the defendant was upset about the removal of his fee basis benefits and that he believed M.M. "was the person that was causing this issue." (*Id.* at 7.) The defendant made other remarks suggesting that the threat was serious, such as stating that his hands were his weapons, he knew how to paralyze people, he knew where to find semi-automatic weapons, and noting that he had harmed hospital employees in the past. Agent LaBuz reacted to the statement with urgency, calling the VA police and the Secret Service, and driving to the defendant's home the morning after the phone call. The two VA employees who received somewhat similar phone calls on June 10, 2008, and June 18, 2008, also reacted with concern by following up with law enforcement. M.M. testified that she had been frightened when she heard that she had

been threatened and she stopped working late so as to avoid walking to her car alone at night.

From all of this evidence, a reasonable jury could conclude that the defendant's statement was a "true threat."

The defendant emphasizes that he indicated to Agent LaBuz that he had been trying to schedule an appointment with the Secretary of the VA in Washington, D.C. The defendant argues that he had a political dispute with the VA about how it was run and how his fee basis benefits had been revoked. But the defendant's statements regarding the Secretary of the VA are largely irrelevant as to whether he made a true threat against M.M., an employee of the VA medical center in Mountain Home. This case is distinguishable from *Watts*. Here, there was sufficient evidence for the jury to conclude that the defendant's statement regarding M.M. was a "true threat," which is not protected speech. "If there is substantial evidence that tends to show beyond a reasonable doubt that an ordinary, reasonable [person] who is familiar with the context of the [statement] would interpret it as a threat of injury, the court should submit the case to the jury." *United States v. Maisonet*, 484 F.2d 1356, 1358 (4th Cir. 1973).

The defendant also argues that his statement was not a "true threat" because it was conditional. The defendant indicated that he would never go to the VA medical

center and therefore, he contends, the threat was conditioned upon something that would never occur. But a threat may cause apprehension in a reasonable person even if it is conditional. As the Ninth Circuit has aptly stated:

> While the conditional nature of a statement may be a factor in determining whether it constitutes a true threat, conditional language is not dispositive. Indeed, "[m]ost threats are conditional; they are designed to accomplish something; the threatener hopes that they *will* accomplish it, so that he won't have to carry out the threats." Therefore, when a communication "constitutes a clear and unambiguous threatening statement," "the conditional nature of [the] statement does not make the statement any less of a 'true threat' simply because a contingency may be involved."

*United States v. Sutcliffe*, 505 F.3d 944, 961 (9th Cir. 2007) (internal citations omitted); *see Darby*, 37 F.3d at 1067 (rejecting the defendant's contention that because one of his statements was conditional it was not a threat within the meaning of § 875(c)); *see also United States v. Lockhart*, 382 F.3d 447, 452 (4th Cir. 2004) (considering the fact that the defendant's statement was grammatically conditional, but concluding, nevertheless, that the statement was a true threat); *United States v. Bly*, 510 F.3d 453, 459 (4th Cir. 2007) (same).

The defendant in this case was trying to recover fee basis benefits so that he would not have to receive medical treatment at the VA facility in Mountain Home, where M.M. worked. The fact that he claimed at various points that he would never go to that facility does not foreclose the possibility that his statement to Agent LaBuz

-9-

regarding M.M. was a true threat.  Considering all of the evidence presented, a reasonable jury could conclude that the defendant's statement was a true threat despite its potentially conditional nature.

Finally, the defendant insists that a threat directed towards a third party is no threat at all.  Here, the object of the defendant's threat was M.M., but he was speaking to Agent LaBuz.  But a threat may cause apprehension in a reasonable person even if it is directed towards a third party.  *See Spring*, 305 F.3d at 280 ("[A] statement may qualify as a threat even if it is never communicated to the victim.").  The statute under which the defendant was convicted is not confined to threats against the listener or recipient.  *See* 18 U.S.C.A. § 875(c) (criminalizing the interstate transmission of "any threat to injure the person of another").

The defendant cites two cases where a district court granted a posttrial motion of acquittal after a jury verdict that had been based on a third party threat, *United States v. Bellrichard*, 779 F. Supp. 454 (D. Minn. 1991), and *United States v. Fenton*, 30 F. Supp. 2d 520 (W.D. Pa. 1998).  Both of these cases are distinguishable on the facts.  In *Bellrichard*, the defendant mailed a postcard in interstate commerce containing an alleged threat against two judges.  There was evidence that "the defendant felt a certain solidarity" with the recipient of the postcard, who had previously had a bad experience with the judicial system and otherwise had no

connection to the judges mentioned in the postcard. 779 F. Supp. at 458. The court concluded that in this context, no reasonable recipient could have interpreted the defendant's statements as a true threat. *Id.* at 459. Similarly, in *Fenton*, the recipient of the alleged threat, an insurance adjuster, had no connection to the person threatened, United States Representative John Murtha. 30 F. Supp. 2d at 526.

Here, the recipient of the threat, Agent LaBuz, was charged with protecting employees of the VA such as M.M., the object of the threat. Evidence at trial showed that the defendant's statement caused Agent LaBuz to be apprehensive and that he reacted with concern. There was sufficient evidence for a reasonable jury to conclude that a reasonable person hearing the statement and familiar with all of the objective circumstances under which the threat was made would understand it as a serious expression of an intent to injure or murder.

I find that when viewed in the light most favorable to the government, there was sufficient evidence from which the jury could conclude that the defendant's statement on June 25, 2008, was a true threat. Therefore, the defendant's motion seeking acquittal will be denied.

III

I will also deny the defendant's motion for a new trial. This court has the discretion to grant a new trial where the interests of justice so require. Fed. R. Crim. P. 33(a); *United States v. Mitchell*, 602 F.2d 636, 639 (4th Cir. 1979). The defendant argues that a new trial should be granted based on new evidence discovered by the defendant's investigator subsequent to trial, and because the court erred in refusing certain evidence and two of the defendant's proposed jury instructions. I will address each of these arguments in turn.

A

A new trial is not required based on the evidence discovered by the defendant's investigator after trial because this evidence was merely impeaching and probably would not result in an acquittal. A motion for a new trial based on newly discovered evidence under Federal Rule of Criminal Procedure 33 may only be granted if the defendant shows that each of the following five factors have been met: (1) the evidence has been discovered since the trial, (2) the moving party acted with diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to the issues involved in the case, and (5) the new evidence would probably produce an acquittal at a new trial. *United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1993), *aff'd*, 511 U.S. 485 (1994). The Fourth Circuit "has

-12-

emphasized that new evidence going only to the credibility of a witness does not generally warrant the granting of a new trial." *Custis*, 988 F.2d at 1359.

During cross-examination, defense counsel asked Agent LaBuz why he drove to the defendant's home on June 26, 2008, instead of immediately after his phone conversation with the defendant on June 25. Agent LaBuz responded that on the afternoon of June 25 he had been occupied with other matters he had to attend to in response to the defendant's threats: "[T]hat day [June 25] I recall getting photos to those offices [where M.M. and the Secretary of the VA worked], notifying [VA] police services, notifying Secret Service and all the other agencies . . . , and things of that nature." (Trial Tr. vol. 2, 6-7, Jan. 30, 2009.) He explained further, "[W]e work[ed] with police services at Mountain Home, Tennessee to make sure they were aware of Mr. Meachum's threats, make sure they had photos. We also notified the secretary . . . of the VA's offices, had photos sent down there, and worked on beefing up security if needed." (*Id.* at 7.) When asked whether he had given M.M. a photo of the defendant, LaBuz stated, "No. I am in Washington, D.C. and [M.M.] is in Mountain Home, Tennessee." (*Id.* at 13.) Upon redirect examination by the government, however, Agent LaBuz reiterated that the VA police in Mountain Home had photographs of the defendant, which were distributed to medical center staff.

-13-

A posttrial investigation by the defense has revealed that photographs of the defendant were never actually sent to the medical center in Mountain Home. There is no question that this is new evidence discovered after the trial and that the defense acted with diligence. However, this evidence does not warrant a new trial.

The defendant asserts that Agent LaBuz "told a deliberate falsehood" that was "designed to communicate to the jury that . . . LaBuz had a real concern for [M.M.'s] safety." (Def.'s Renewed Mot. For Acquittal and for New Trial 6.) But there is no evidence that Agent LaBuz intentionally testified falsely rather than due to mistaken recollection. Agent LaBuz now agrees that although he requested a photograph of the defendant from the Virginia DMV on June 25, 2008, he did not receive the requested photograph until June 27, after the defendant had been taken into custody. The evidence that LaBuz erred in his testimony because he did not in fact send this photograph to Mountain Home on June 25 is impeachment evidence in that it undermines the clarity and accuracy of his recollection, but it does not show that he intentionally lied under oath. After hearing Agent LaBuz's testimony concerning his unfortunate error, I am convinced that it was unintentional.

The defendant argues that this new evidence is not merely impeaching because it is relevant to an element of the offense, that is, whether the defendant's statement was a true threat that under the circumstances would cause apprehension in a

reasonable person. But there was ample evidence at trial that Agent LaBuz reacted to the defendant's statement with a sense of urgency. It is undisputed that Agent LaBuz reached out to the VA police and the Secret Service after his conversation with the defendant on June 25, 2008, and that he drove more than five hours to the defendant's home on June 26. Agent LaBuz contacted the Virginia DMV on June 25 to secure a photograph of the defendant; the fact that the photograph was not actually sent to the medical center in Mountain Home on that date is immaterial and unlikely to result in an acquittal upon retrial.

Because the evidence discovered by the defense after trial is merely impeaching and not otherwise material to the issues involved in the case, and the new evidence probably would not produce an acquittal at a new trial, a new trial is not warranted.

B

The defendant's additional arguments for a new trial also fail. Evidence proffered by the defendant was properly excluded and the court's final instructions to the jury were adequate.

At trial, I admitted an audio recording of the defendant's June 26, 2008, conversation with Agent LaBuz, Gregory Watson, a Secret Service agent, and Richard Vaughn, the Sheriff of Grayson County, Virginia. The defendant's wife and

his friend David Kiser were also present and participated in the conversation. I excluded a portion of the recording where Agent Watson spoke to Kiser about his plans to drive the defendant to Washington, D.C. This portion of the audio tape was irrelevant to the issues before the jury and was also hearsay not subject to any exception.

The defendant claims that this conversation between Agent Watson and Kiser was relevant to his defense that his statements were protected political speech because Watson and Kiser discussed the defendant's plans to speak with the President of the United States and the Secretary of the VA. The defendant argues that the excluded portion of the recording was admissible under the rule of completeness, Rule 106. *See* Fed. R. Evid. 106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."). The purpose of Rule 106 "is 'to prevent a party from misleading the jury by allowing into the record relevant portions of the excluded testimony which clarify or explain the part already received.'" *United States v. Bollin*, 264 F.3d 391, 414 (4th Cir. 2001) (quoting *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996)). "Rule 106 does not, however, 'render admissible the evidence which is otherwise inadmissible under the hearsay rules.'"

*United States v. Lentz*, 524 F.3d 501, 526 (4th Cir. 2008) (quoting *Wilkerson*, 84 F.3d at 696).

The excluded portion of the recording was hearsay and was not necessary to avoid misleading the jury or to place the portions admitted into proper context. In addition, although the jury did hear a portion of the recording where the defendant discussed his plans to see the Secretary of the VA in Washington, D.C., those plans were largely irrelevant as to whether the defendant's statements regarding M.M. were true threats.

Also, the final instructions issued to the jury were correct and adequate. "[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988).

The defendant contends that the court's definition of a "threat" did not adequately encompass the *Watts* definition of "true threat." The defendant proposed the following instruction:

> [A] "true threat" is a serious statement expressing an intention to inflict bodily injury or to murder, as distinguished from idle or careless talk, exaggeration, political argument or hyperbole, or jest. A statement is a threat if it was made under such circumstances that a reasonable person hearing the statement and familiar with all of the objective circumstances under which the threat was made, would understand it as a serious expression of an intent to injure or murder.

-17-

(Def.'s Jury Instruction, at 3.) This instruction does not differ significantly from the court's instruction on the meaning of "threat." *See supra* Part II. The court's definition complied with *Watts*, 394 U.S. at 708, *Spring*, 305 F.3d at 280, and *Darby*, 37 F.3d at 1066, and adequately defined "threat."

The defendant also insists that the court erred in refusing his proposed instruction regarding the First Amendment. But there was not a sufficient factual basis to support this instruction. Further, any First Amendment concerns involved in this case were adequately addressed by the instruction to the jury defining a "threat," *see Spring*, 305 F.3d at 280, because a true threat is not protected speech, *see Watts*, 394 U.S. at 708 (distinguishing a true threat from political hyperbole, which is protected speech); *United States v. Marchetti*, 466 F.2d 1309, 1314 (4th Cir. 1972) ("Threats and bribes are not protected [speech] simply because they are written or spoken . . . .").

Since the new evidence discovered by the defense does not warrant a new trial and the court's evidentiary ruling and final jury instructions were correct, the defendant's motion for a new trial will be denied.

-18-

IV

For the foregoing reasons, it is **ORDERED** that Defendant's Renewed Motion for Acquittal and for New Trial is DENIED.

ENTER: May 7, 2009

/s/ JAMES P. JONES
Chief United States District Judge

-19-

Case 1:08-cr-00034-JPJ   Document 122   Filed 05/07/09   Page 19 of 19   Pageid#: 493